483 P.2d 940

STATE of New Mexico, Plaintiff-Appellee,
v.
Michael John BURK, Defendant-Appellant.
No. 563.

Court of Appeals of New Mexico.
Feb. 19, 1971.

Leon Taylor, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Thomas L. Dunigan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Defendant appeals his conviction of two armed robberies. Section 40A–16–2, N.M. S.A. 1953 (Repl.Vol. 6). The issues concern: (1) absence of a preliminary hearing; (2) asserted lack of a valid waiver in connection with his incriminating statement; (3) asserted inadequacy of the trial court's determination as to admissibility of the statement; and (4) a "shotgun" instruction.

*Absence of preliminary hearing.*

■ Under N.M. Const. Art. II, § 14, a defendant may be proceeded against either by a grand jury indictment or by a criminal information. State v. Mosley, 75 N.M. 348, 404 P.2d 304 (1965); State v. Mosley, 79 N.M. 514, 445 P.2d 391 (Ct.App.1968). If charged by criminal information, a defendant has a right to a preliminary examination. No such right exists if the defendant is indicted by a grand jury. State v. Mosley, 75 N.M. 348, 404 P.2d 304, supra.

Defendant was indicted by a grand jury. Having been so indicted, he recognizes that he did not have a right to a preliminary examination. His complaint is directed to the maneuvering prior to the grand jury indictment.

Defendant, taken before a magistrate on a Thursday, requested a preliminary examination the next day. The magistrate, however, set the preliminary hearing for the following Monday. On Monday, over defendant's objection, the prosecutor obtained a continuance until Wednesday. On Wednesday, the prosecutor obtained the indictment before the preliminary hearing was held. The prosecutor admitted that, from the outset, he intended to obtain an indictment before a preliminary hearing was held.

Defendant contends " * * * he was denied due process of law because the prosecution was overzealous in its prosecutorial activities * * * " The prosecutor testified as to his preference for grand jury indictments because the preliminary hearing " * * * is a cumbersome time consuming, expensive procedure the defense counsel uses as a means and a vehicle for discovery, which I consider improper. * * * " Defendant asserts the prosecutor's view is inconsistent with his obligation to be a "seeker of the truth," that the prosecutor places himself in the role of an adversary to defendant and desires to keep the defendant from learning the nature of the prosecution's case.

■ The issue is whether the prosecutor, by overzealousness, deprived defendant of due process. While the prosecutor was zealous to obtain a grand jury indictment, the record does not show that he exceeded the "bounds of propriety," as alleged by defendant. The choice to proceed by information or indictment is that of the State. Compare State v. Mosley, 79 N.M. 514, 445 P.2d 391, supra; Flores v. State, 79 N.M. 420, 444 P.2d 605 (Ct.App.1968). The choice is not the defendant's. The record shows that defendant was attempting to deprive the prosecutor of that choice; that defendant was attempting to force the prosecutor to a preliminary hearing against the prosecutor's wishes. The fact that the prosecutor may have maneuvered zealously to preserve the choice, which was his to exercise, does not show that he exceeded the bounds of propriety.

■ Defendant also contends " * * * he was denied a fair trial because his

counsel was denied the opportunity to prepare an adequate defense." One answer to this claim is: "[t]he object of a bill of particulars in criminal cases is to enable the defendant to properly prepare his defense, * * *" State v. Mosley, 75 N.M. 348, 404 P.2d 306, supra. Defendant obtained a bill of particulars. He does not claim that the information, supplied as a result of the hearing on the motion for a bill of particulars, was insufficient to prepare an adequate defense. The essence of this contention is that because there was a grand jury indictment, defendant was deprived of the discovery he could have obtained at a preliminary hearing. Discovery, however, is not the object of a preliminary hearing. State v. Archuleta, (Ct.App.), 482 P.2d 242, decided December 31, 1970.

■ The fact that the prosecutor was not overzealous, and that defendant was not deprived of an opportunity to prepare his defense, answers this point. An additional answer to the question of due process and fair trial is given in Williams v. Sanders, 80 N.M. 619, 459 P.2d 145 (1969). It states:

"In those cases in New Mexico where complaint and information are utilized in lieu of indictment, the preliminary hearing has been held to be a critical stage of the criminal process for purposes of applying the right-to-counsel provision of the Sixth Amendment to the United States Constitution. (Citations omitted). It was so held because it was believed the accused needed the assistance of an attorney in cross-examining state's witnesses whose recorded testimony could, under certain circumstances, be received in evidence at trial. (Citation omitted). We do not read this case to mean, however, that a preliminary hearing is an essential prerequisite to a guilt-determining process which comports with fundamental fairness and due process, and respondent has not directed us to any authority so holding. * * *"

*Waiver in connection with incriminating statement.*

■ The testimony shows defendant was advised of his constitutional rights three times—while walking to the patrol car after his arrest, at the booking desk at the police station and immediately prior to defendant giving his incriminating statement the following day. Each time the advice included advice concerning defendant's right to a lawyer. At the hearing on the motion to suppress defendant's statement, defendant testified he was told he was entitled to talk to a lawyer before answering any questions, to have a lawyer present during questioning and that if he didn't have enough money to hire a lawyer that an attorney would be appointed for him.

Before giving the incriminating statement, defendant signed a waiver form which included the phrase: "'* * * If you want a lawyer but do not have the money to hire one, one will be provided for you by the judge. * * *'" Defendant made his statement, and it was being read to him when his attorney came into the room and interrupted the reading. The portion of his statement admitted into evidence was never read back to defendant, nor did he sign the statement.

Defendant claims he did not knowingly and intelligently waive his right to consult with counsel and further, that the State failed in its burden of showing a knowing and intelligent waiver. In support of this claim he relies on testimony that he had a limited education; could not read; except for signing his name, could not write; had been verbally threatened upon his arrest and while in his jail cell; was told to go with officers from his cell to the room where he made his statement; and was told if he "cooperated" that "things would be easier on me." Defendant also relies on his testimony that when told an attorney would be appointed if he didn't have the money to hire one, "* * * I thought, well, if you don't have the money to hire a lawyer the Court would appoint you one

and then you would take care of him afterwards, pay him, or whatever."

■ We make two comments on the evidence relied on by defendant. (1) It is not claimed that the statement should have been excluded because of coercion or promises of leniency. The alleged threats and promises are relied on in support of the claimed lack of waiver of the right to have counsel present. (2) Defendant's understanding of the advice concerning appointment of counsel is an item to be considered on the issue of waiver, but that understanding is to be considered with all the other evidence on the question. As stated in Coyote v. United States, 380 F.2d 305 (10th Cir. 1967), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967):

> "It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to assistance of counsel. When the issue is raised in an admissibility hearing * * * it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning."

The evidence on which defendant relies is contradicted. Defendant testified that on the ride from the place of arrest to jail, and without any prior questioning, he told the officers he wanted " * * * to get it over with as fast as possible * * *" He was jailed about 10:00 p.m. and was not interviewed that night. He was interviewed shortly after 8:00 a.m. on the next day. There is evidence that defendant sought the interview at which the statement was made. After being advised of his rights for the third time, defendant signed his name to the waiver. Defendant was then asked if he "understood the rights form." There is evidence that defendant replied that he did understand and that he would talk without a lawyer.

It was for the trial judge to resolve the conflicts in the evidence. It did so by ruling the statement to be admissible, thereby ruling the State met its burden of establishing that defendant knowingly and understandingly waived his right to the presence of counsel. There being substantial evidence supporting the ruling, we cannot say, as a matter of law, that the ruling on admissibility was error. State v. Briggs, 81 N.M. 581, 469 P.2d 730 (Ct.App. 1970) and cases therein cited.

*Adequacy of the trial court's determination re admissibility of statement.*

■ Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964) involved the New York procedure concerning the admissibility of confessions. In New York the trial judge made a preliminary determination regarding the confession and excluded it if, in no circumstances, the confession could be deemed voluntary. If there was a fair question as to voluntariness, the judge received the confession and left the determination of voluntariness to the jury. This procedure was held to violate due process because there was no reliable determination of the voluntariness of the confession admitted in evidence against the defendant. *Jackson* states that the procedures followed in connection with a confession " * * * must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. * * *"

New Mexico procedure as to confessions does not follow the New York method; rather, we follow the Massachusetts rule. State v. Soliz, 79 N.M. 263, 442 P.2d 575 (1968). That rule, as stated in Jackson v. Denno, supra, is:

> " * * * the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are express-

ly stated or may be ascertainable from the record * * *."

A footnote in Jackson v. Denno, supra, states the Massachusetts procedure, which New Mexico follows, "* * * does not, in our opinion, pose hazards to the rights of a defendant. * * *"

Defendant asserts the trial judge failed to follow the requirements of Jackson v. Denno, supra, in that he failed to resolve the disputed facts upon which the voluntariness issue depended. Defendant contends the trial court was required to make a finding on each disputed factual issue pertaining to the voluntariness of defendant's statement. He also contends the trial judge never explicitly found the statement to be voluntary but instead did no more than rule, as in the New York procedure overturned in Jackson v. Denno, supra, that there was enough evidence to allow the jury to pass on the question.

Superficially examined, the record supports defendant's position. There is no specific ruling on disputed factual issues and at one place in the record the trial court did state it was not ruling on whether the statement was voluntary; "* * * [t]hat is entirely up to the jury to determine. * * *"

However, the record also shows that the trial court conducted a hearing, at which evidence was taken, on the question of the admissibility of the confession. This was prior to trial. At that hearing, in denying the motion to suppress, the trial court ruled the investigating officers complied with the "requirements of the law," and that as a "matter of law" the statement was admissible and that the jury could consider it under proper instructions. When the statement was offered at trial, the trial judge made an in-camera inspection of the statement and allowed only a portion of defendant's statement to be read to the jury.

Here, the judge's conclusions are clearly evident from the record. After a hearing, he concluded the statement met legal requirements and was admissible. His find-

ings on disputed issues of fact are also ascertainable from the record since he resolved them against defendant and in favor of admissibility. In this context, the trial court's statement that the issue of voluntariness was entirely up to the jury is no more than a comment that, having determined the statement was obtained in accordance with legal requirements, and was admissible as a matter of law, the final decision in connection with the statement was for the jury. This comports with both New Mexico procedure and Jackson v. Denno, supra. The trial court's determination was not constitutionally inadequate. Compare State v. Soliz, supra.

*Shotgun instruction.*

■ Defendant moved for a mistrial after the jury had been deliberating 4 hours and 5 minutes. The motion was denied. At this point, the trial court, over defendant's objection, gave the jury an additional instruction. The jury returned its verdict one and one-half hours later. Defendant complains of the content of the instruction and its timing.

Defendant contends the additional instruction "* * * amounted to a shotgun instruction urging the jury to reach a decision." The additional instruction was not the "Allen" or "shotgun" instruction which has been approved by the New Mexico Supreme Court. See State v. Minns, 80 N.M. 269, 454 P.2d 355 (Ct.App.1969). Rather, it basically was N.M. UJI 16.2 which this court commended for use in State v. Minns, supra. Although UJI 16.2 does urge the jury to reach a decision, it is not coercive in its wording.

In this case there was added to UJI 16.2 the following: "If you reach a verdict on one of the counts, you should return a verdict on that count." Defendant asserts the trial court, in using this language, "* * * overstepped the boundaries of the recommended instruction * * *" Defendant argues this language is not included in UJI 16.2 and shows the trial court's "* * * anxiety to reach some kind of verdict; * * *"

The fact that the additional language is not part of UJI 16.2, and the possibility that the trial court may have been anxious to reach a verdict, does not make use of the additional language erroneous. The additional language did no more than tell the jury how to proceed in the event it reached a verdict on one of the two counts but could not reach a verdict on the other count. The additional language is not coercive and obviously was designed to give the jury advice on the charges they were considering. Use of the additional language was not error.

Defendant also claims the additional instruction should not have been given, at the time it was given, because in State v. Hatley, 72 N.M. 377, 384 P.2d 252 (1963) the jury had deliberated three hours and there is " * * * an indication that a longer period of deliberation preceding the instruction could constitute prejudicial error * * *." However, in State v. Moore, 42 N.M. 135, 76 P.2d 19 (1938), the jury had deliberated 18 hours before an additional instruction was given. Further, defendant misreads State v. Hatley, supra. There, the contention was that giving an additional instruction after the jury had deliberated three hours " * * * was too short a time to warrant the court's giving such an instruction * * *" State v. Hatley, supra, makes it clear that the giving of additional instructions is within the trial court's discretion. See also, State v. Moore, supra. Here, there is nothing to show an abuse of discretion in giving the additional instruction at the time it was given.

The judgments and sentences are affirmed.

It is so ordered.

SPIESS, C. J., and SUTIN, J., concur.